BRYAN, Judge.
Diana Massey appeals from a summary judgment in favor of the Florence City Board of Education (“the board”), the individual members of the board (“the board members”), in their official capacities,[1] and the superintendent of the board (“the superintendent”), in her official capacity.[2] We affirm.
Effective March 10, 2004, the board employed Massey, who is a registered nurse, for the position of “Head Start Health and Data Entry Coordinator” at the Handy Head Start Family Service Center (“Handy Head Start”). On August 10, 2010, the board transferred Massey to the position of “Registered Nurse” at Weeden Elementary School.
While she was employed as Head Start Health and Data Entry Coordinator at Handy Head Start, Massey was paid the salary specified for that position on the board’s salary schedule for its Head Start and Early Head Start staff. Since being transferred to the position of Registered Nurse at Weeden Elementary School on August 10, 2010, Massey has been paid the salary specified for the position of Regis *1215 tered Nurse on the board’s salary schedule for its employees at schools that serve children in kindergarten and grades 1 through 12 (“the K-12 salary schedule”).
The annual education budget acts for fiscal years 2007-2008, 2008-2009, 2009-2010, and 2010-2011 contained minimum-salary schedules for school nurses (“the minimum-salary schedules”). The salary Massey was paid while she was Head Start Health and Data Entry Coordinator at Handy Head Start was lower than both the salary specified by the minimum-salary schedules for a school nurse with experience comparable to Massey’s and the salary specified by the K-12 salary schedule for a Registered Nurse with experience comparable to Massey’s.
On March 8, 2009, Massey sued the board, the board members, and the superintendent, claiming that, beginning with fiscal year 2007-2008, the board should have paid her for her service as Head Start Health and Data Entry Coordinator at Handy Head Start either the salary specified for a school nurse with experience comparable to Massey’s on the minimum-salary schedules or the salary specified for a Registered Nurse with experience comparable to Massey’s on the K-12 salary schedule. Massey stated a breach-of-contract claim seeking compensatory damages, costs, and an attorney fee. In addition, she stated a claim seeking a judgment declaring that she was entitled to back pay and benefits (“the claimed back pay and benefits”) in an amount equal to the difference between the salary and benefits she would have received if she had been paid in accordance with the minimum-salary schedules or the K-12 salary schedule while she served as the Head Start Health and Data Entry Coordinator at Handy Head Start and the salary and benefits she actually received for that service. She also stated claims seeking a writ of mandamus and an injunction compelling the board, the board members, and the superintendent to pay her the claimed back pay and benefits.
Answering, the board, the board members, and the superintendent denied that Massey was entitled to be paid in accordance with either the minimum-salary schedules or the K-12 salary schedule while she served as the Head Start Health and Data Entry Coordinator at Handy Head Start, denied that she was entitled to the claimed back pay or benefits, and asserted that Article I, § 14, Alabama Constitution of 1901 (“ § 14”), barred Massey’s claims.
On September 15, 2011, the parties filed cross-motions for a summary judgment and supporting evidence. Following a hearing, the trial court, on November 9, 2011, entered a judgment denying the summary-judgment motion filed by Massey and granting the summary-judgment motion filed by the board, the board members, and the superintendent.
Massey timely filed a Rule 59(e), Ala. R. Civ. P., postjudgment motion, which the trial court denied. Massey then timely appealed to this court.
“We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala.2002).
“ ‘We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Onee a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality *1216 that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’
“Nationwide Prop. & Cas. Ins. Co.[ v. DPF Architects, P.C.], 792 So.2d [369] at 372 [(Ala.2000)] (citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).
Initially, we note that Massey conceded in the trial court and concedes in her reply brief to this court that § 14 bars all her claims against the board. Therefore, we affirm the summary judgment with respect to the board. Moreover, Massey concedes in her reply brief to this court that § 14 bars all her claims against the superintendent. Therefore, we affirm the summary judgment with respect to the superintendent.
Although Massey argues that § 14 does not bar her claims against the board members insofar as her claims seek to compel the board members to pay her the claimed back pay and benefits, she has not argued that § 14 does not bar her claims insofar as they seek other forms of relief against the board members. “When an appellant fails to argue an issue in its brief, that issue is waived.” Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982). Therefore, we affirm the summary judgment in favor of the board members insofar as Massey’s claims seek any form of relief other than a writ of mandamus or an injunction compelling the board members to pay her the claimed back pay and benefits.
In Ex parte Bessemer Board of Education, 68 So.3d 782, 790-91 (Ala.2011), the supreme court held that § 14 did not bar a claim against the members of the Bessemer Board of Education in their official capacities seeking to compel them to pay an employee of the Bessemer Board of Education the appropriate pay increase she was due under a statute because the members of the Bessemer Board of Education had a legal duty to pay her the appropriate pay increase and, therefore, the payment of the appropriate pay increase she was due under the statute was a ministerial act. In the present case, if Massey was entitled to be paid in accordance with either the minimum-salary schedules or the K-12 salary schedule while she was Head Start Health and Data Entry Coordinator at Handy Head Start, the board would have a legal duty to pay her the claimed back pay and benefits and, therefore, the payment of the claimed back pay and benefits by the board members would be a ministerial act. Id. Accordingly, we conclude that § 14 does not bar Massey’s claims insofar as they seek to compel the board members to pay her the claimed back pay and benefits, and, therefore, we will consider the merits of Massey’s argument regarding those claims.
Massey argues that, beginning with the 2007-2008 fiscal year, she was entitled to be paid at least the salary specified on the minimum-salary schedules for a school nurse with experience comparable to hers while she served as the Head Start Health and Data Entry Coordinator at Handy Head Start because, she says, she was an employee of the board, she was a nurse, and Handy Head Start is a school and, therefore, she was a school nurse. The board members agree that Massey was an employee of the board while she served as Head Start Health and Data Entry Coordinator at Handy Head Start; however, they assert that she was not entitled to be *1217 paid in accordance with the minimum-salary schedules or the K-12 salary schedule while she served in that position because she was not serving as a “school nurse” as that term is used in the pertinent sections of the Code.
Before April 21, 2009, § 16-22-16, Ala. Code 1975, provided, in pertinent part:
“(a) The State Board of Education shall require the employment of registered nurses in each local school system. ...
[[Image here]]
“(e) There shall be a minimum statewide salary schedule for school nurses which shall be included in the annual budget act for the public schools.
“(f) The amounts necessary to meet the requirements of this section shall be appropriated in the annual budget act for the public schools.”
(Emphasis added.)
Effective April 21, 2009, § 16-22-16 was amended. As amended, § 16-22-16 now provides, in pertinent part:
“(a) The State Department of Education ... shall require the employment of school nurses in each local school system.
[[Image here]]
“(f) At a minimum, all school nurses shall be paid according to the statewide salary schedule for school nurses which shall be included in the annual budget act for the public schools.
“(g) The amounts necessary to meet the requirements of this section shall be appropriated in the annual budget act for the public schools....”
(Emphasis added.)
Section 16-11-16, Ala.Code 1975, provides:
“(a) The city board of education shall have power to establish and maintain a system of public schools including kindergartens and playgrounds for the benefit of children who are bona fide residents of and living within the corporate limits of such city.
“(b) Such children who are six years of age and less than 19 years of age on the date school opens shall be entitled to admission to the elementary, junior and senior high schools.
“(c) If a kindergarten is established and maintained, children from five to eight years of age may be admitted on such terms and conditions as the city board of education may prescribe.”
(Emphasis added.)
In support of their summary-judgment motion, the board members filed, among other things, an affidavit signed by Dr. Kendy Behrends. In pertinent part, that affidavit states:
“2. I was the Superintendent of the Florence City Board of Education (‘the Board’) from January 2001 through June 2010. Prior to becoming Superintendent, I was employed by the Board as an Assistant Superintendent from 1999 to January 2001. Prior to becoming Assistant Superintendent, I was employed by the Board as Federal Programs Coordinator from 1993 to 1999.
[[Image here]]
“4. Through my service for the Board as Federal Programs Coordinator, Assistant Superintendent, and Superintendent, I became knowledgeable about the Early Head Start and Head Start programs.
[[Image here]]
“6. Head Start is a federally funded program designed to assist underprivileged 3 and J year old children and their families with academic preparedness before the children begin school. Early Head Start is a federally funded *1218 program where employees go to the homes of eligible children ages 0-3 and provide services similar to those in the Head Start program.
“7. Head Start and Early Head Start are administered by the Department of Health and Human Services. The Department of Health and Human Services issues grants to local agencies to administer the Head Start and Early Head Start programs locally. The Department of Health and Human Services issues regulations which govern the Head Start and Early Head Start programs. For instance, these regulations require that decisions affecting a local Head Start or Early Head Start program be approved by a Policy Council which is comprised of parents and community leaders.
“8. Head Start and Early Head Start are not Kindergarten through twelfth grade (‘K-12’) programs required by the State of Alabama. Head Start and Early Head Start are not governed or funded by the State Board of Education. Rather, Head Start and Early Head Start are funded by a grant from the [Department ofl Heath and Human Services. The Head Start and Early Head Start programs follow regulations promulgated by the [Department of] Health and Human Services in concert with its Atlanta office.
“9. The duties of the employees in the Head Start and Early Head Start programs are dictated by these federal regulations.
“10. Prior to 1997, the Community Action Agency of Northwest Alabama (‘Community Action Agency’) administered the Head Start grant. During this time, the Board allowed Community Action Agency to use the Handy Head Start Center for the Head Start program.
“11. After the Board received the Head Start grant, it continued to administer the Head Start program at the Handy Head Start Center. However, there are a few Head Start classes in the buildings which also contain Weeden Elementary School and Harlan Elementary School.
“12. While the Board’s K-12 schools only serve the children in the city of Florence, the Head Start and Early Head Start programs serve approximately 280 eligible children, ages 0-4, in Lauderdale County.
“18. Other than three instructors who receive a supplement from the Office of School Readiness[3] (‘OSR’), the instructors in the Early Head Start and the Head Start programs are not required to be certified by the State. Teachers in K-12 must be certified by the State.
“14. Head Start and Early Head Start programs are governed differently than K-12. Head Start and Early Head Start are governed in accordance with [Department ofl Health and Human Services regulations and decisions must be approved by a Policy Council. Head Start and Early Head Start are not governed by the State Department of Education. K-12 schools, on the other hand, are regulated by the Alabama State Department of Education.
“15. As Head Start Health and Data Entry Coordinator, Diana Massey’s job performance was reviewed pursuant to a Monitoring and Protocol Guide developed by the Department of Health and *1219 Human Services. The Monitoring and Protocol Guide is based on federal regulations and standards which govern the Head Start program.... ”
(Emphasis added.)
The board members also filed an affidavit signed by Dr. Janet Womack, who has been the superintendent since July 1, 2010, in support of their summary-judgment motion. In pertinent part that affidavit states:
“6. The Board owns and operates 7 schools. It operates three elementary schools, Forest Hills Elementary, Wee-den Elementary and Harlan Elementary. The Board has two middle schools, Florence Middle School and Hibbett Middle School. The Board also operates the Florence Freshman Center and Florence High School.
“7. The Board also owns the Handy Head Start Family Service Center (‘Handy Head Start Center’). The Handy Head Start Center was an elementary school until 1972. Now, it is a family service center which houses the Lauderdale County Head Start and Early Head Start programs.
“8. The Board receives grants from the United States Department of Health and Human Services to administer the Early Head Start and Head Start programs to the children of Lauderdale County.
9. The Head Start program is not a Kindergarten through twelfth grade (‘K-12) program required by the State of Alabama. Head Start is not governed or funded by the State Board of Education. Rather, Head Start is funded by a grant from the [Department of] Heath and Human Services. The Head Start program follows regulations promulgated by the Department of Health and Human Services.”
(Emphasis added.)
In opposition to the board members’ summary-judgment motion, Massey filed, among other things, an affidavit signed by her. In pertinent part, that affidavit states:
“16. Handy Head Start serves Head Start children who are Pre-KJHead Start. In addition, Head Start children with special needs and Florence City children that do not qualify for Head Start and are not age appropriate for the school system are served. The State[ Office of School Readiness[4]] children are also at Handy School. Non-Head Start children are referred to as ‘community children.’ While at Handy I was called upon and required to treat ‘community children,’ [Office of School Readiness] students and children with special needs who are not eligible for Head Start.”
(Emphasis added.)
The plain language of § 16-22-16 requires the employment of school nurses in local public-school systems and provides that “amounts necessary to meet the requirements of this section shall be appropriated in the annual budget act for the public schools.” Section 16-11-16 grants the board authority to establish and maintain a system of public schools that serve children in kindergarten and in grades 1 through 12 (“K-12”). It is undisputed that all the children served by Handy Head Start are under the age of 5, which is the minimum age for a child to enter kindergarten, see § 16 — 11—16(c), and that Handy Head Start does not serve children in K-12. Moreover, it is undisputed that no funds were appropriated for a school-nurse position at Handy Head Start in the annu *1220 al budget acts for the public schools. Thus, we conclude that Handy Head Start is not a public K-12 school and, therefore, is not part of the local public-school system in the City of Florence. Consequently, neither § 16-22-16 nor the minimum-salary schedules apply to Handy Head Start. Moreover, because neither § 16-22-16 nor the minimum-salary schedules apply to Handy Head Start, Massey was not entitled to be paid in accordance with the minimum-salary schedules while she served as the Head Start Health and Data Entry Coordinator at Handy Head Start.
Massey argues that she was entitled to be paid in accordance with the minimum-salary schedules because, she says, the State Superintendent of Education issued a letter dated August 26, 2008, in which he stated:
“[T]he Department of Education’s position on paying nurse salaries is as follows:
“‘Any licensed nurse employed by a local board of education in Alabama should be paid, at a minimum, the amount listed in the F[iscal] Y[ear] 2009 Education Budget. A person performing LPN [Licensed Practical Nurse] duties and hired for such a position should be paid according to the Nurse Salary Matrix for LPNs. A person performing RN [Registered Nurse] duties and hired for such a position should be paid according to the Nurse Salary Matrix for RNs....’”
However, the State Department of Education is responsible for “the direction and supervision of public kindergarten through twelfth grade schools.” Alabama Administrative Code (State Bd. of Education), Rule 290-010-010-.01. Handy Head Start is not a public K-12 school. Consequently, the policies of the State Department of Education do not apply to Handy Head Start and, therefore, do not apply to Massey’s service as Head Start Health and Data Entry Coordinator at Handy Head Start.
Moreover, because Handy Head Start does not serve children in K-12 and is not part of the local public-school system in the City of Florence, Massey was not entitled to be paid in accordance with the K-12 salary schedule while she served as Head Start Health and Data Entry Coordinator at Handy Head Start. Accordingly, we affirm the summary judgment with respect to Massey’s claims seeking to compel the board members to pay her the claimed back pay and benefits.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The board members are Vicki Kirkman, Tom Wissert, Bill Jordan, MaLeah Chaney, Laura Hardeman, and Jim Fisher.

. When Massey Hied her action, the superintendent was Dr. Kendy Behrends. While the action was pending in the trial court, Beh-rends retired and her successor, Dr. Janet Womack, was automatically substituted for Behrends pursuant to Rule 25(d)(1), Ala. R. Civ. P.

. The Office of School Readiness administers a prekindergarten program. See § 26-24-23, Ala.Code 1975.

. See supra note 3.